## A00A1246. SIRMANS v. THE STATE.

(534 SE2d 862)

ELDRIDGE, Judge.

I. B. Sirmans was convicted of four counts of animal cruelty[1] and one count of simple assault following a jury trial.[2] Without contesting the sufficiency of the evidence, he raises five enumerations of error in this appeal.

The facts presented showed that Sirmans and his family reside on a farm in Berrien County, where they raise various animals, such as cows, chickens, ducks, goats, and hogs. In April 1998, the Tift Area Humane Society Director, Lynn Hampton, contacted the Berrien County Sheriff's Department regarding complaints that both entities had received about Sirmans' alleged neglect of his animals by failing to provide adequate food and water. The Sheriff's Department requested that Hampton "check the situation out." Hampton drove past Sirmans' property on or about April 13, 1998, and observed farm animals that appeared by their physical condition to be deprived of food and water in plain view from the roadway.

On April 16, 1998, Hampton reported her findings to the Sheriff's Department. The same day, Hampton, several Humane Society employees, a local veterinarian, and two Sheriff's Deputies went to Sirmans' farm to investigate further. Although Sirmans refused to allow them to look around the property, Hampton testified that the large animals were outside in plain view and that they were deprived of food and water. She stated, "There was a little bit of hay out there. The water that was out there that we saw was very, very little in there, and it was stagnated, it was green with mosquito larvae. Any of the water that was found, that was the condition of it." A Humane Society employee photographed the animals and their surroundings. The animals that were in the "worst possible condition" were then loaded onto trucks and transported for veterinary care and shelter.[3] A few of the smaller animals died en route or within a few days thereafter.

The State presented the photographs at trial, as well as the testimony of the individuals who observed the animals at the time they

---

[1] Under OCGA § 16-12-4 (a), a person is guilty of misdemeanor animal cruelty in the second degree "when his act, omission, or neglect causes unjustifiable physical pain, suffering, or death to any living animal."

[2] Sirmans was acquitted of nine counts of animal cruelty, and the trial court directed a verdict as to one count of animal cruelty (Count 2).

[3] The veterinarian specifically recommended that the Humane Society seize the cows, the horse, the pony, the donkey, and the dogs, due to their clear malnourishment. Such seizure was for evidence of animal cruelty. When the Humane Society returned the next day to confiscate additional animals, they discovered that the ducks, chickens, and rabbits were out of the pens and running freely on the property. The Humane Society did not retrieve these animals.

were seized or shortly thereafter. These individuals testified that the animals were "in really, really bad shape," "very starved," "very weak," and "[in] [e]xtremely poor condition." Hampton described it as "one of the worst cases I've ever seen of animal cruelty and animal neglect."

1. In his first enumeration, Sirmans claims that the trial court erred in denying his motion to suppress evidence.

> [Sirmans] unsuccessfully moved to suppress evidence . . . seized from his home. Although [Sirmans] argued during his motion to suppress hearing the evidence seized during the search was inadmissible because the search was illegal, he did not offer that objection at trial. When each item of evidence seized during the search was offered for admission at trial, [Sirmans] affirmatively stated he had no objection. . . . [F]ailing to object at trial is not a waiver of the motion to suppress grounds, but affirmatively stating there is no objection in effect concedes the point. [Sirmans] affirmatively stated at trial that he had no objection to the admission of the evidence seized. Thus, defendant waived and failed to preserve his right to contest the admission of the evidence on appeal on the grounds raised in the motion to suppress.

(Citations and punctuation omitted.) *Carter v. State*, 238 Ga. App. 708, 709 (1) (520 SE2d 15) (1999), citing *Dyer v. State*, 233 Ga. App. 770 (505 SE2d 71) (1998). See also *Mattingly v. State*, 205 Ga. App. 777 (1) (423 SE2d 709) (1992). Thus, any objections as to photographs taken were subsequently waived at the time of tender into evidence without objection.

2. As to the admission of any additional evidence which resulted from the search, this Court finds that the trial court did not err in denying Sirmans' motion to suppress. Although the trial court's order does not set out the specific reason it denied Sirmans' motion to suppress, a decision right for any reason will be affirmed on appeal. *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991).

(a) As an initial matter, we reject the State's claims that the Humane Society employees were acting as private citizens, thereby avoiding the constitutional restrictions on search and seizure of private property. See U. S. Const., Amend. IV; Ga. Const. of 1983, Art. I, Sec. I, Par. XIII. Since the evidence presented clearly demonstrated that the Humane Society employees were acting as agents in investigating and in concert with the Berrien County Sheriff's Department in seizing Sirmans' animals, the safeguards of the Fourth Amendment are triggered. See *Williams v. State*, 257 Ga. 788, 789 (3) (364 SE2d 569) (1988).

(b) Sirmans contends that any evidence collected at the scene should have been suppressed because it was the product of an illegal search of his private property. It is undisputed that the State did not secure a search or arrest warrant before going onto Sirmans' property. The State claims, however, that the search was authorized under the "plain view" exception to the warrant requirement. Under such exception, "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." (Citations and punctuation omitted.) *Galbreath v. State*, 213 Ga. App. 80, 82 (2) (443 SE2d 664) (1994). In order to satisfy the plain view exception, the State must fulfill the following criteria:

> (1) that there must be a prior valid intrusion onto a person's property before evidence is observed and seized; (2) discovery of the evidence must be the result of its being in plain view and not the result of an investigatory search; and (3) it must be immediately apparent that the item seized is evidence or contraband.

(Citations and punctuation omitted.) Id. at 83.

In this case, evidence was presented to support all three criteria. Hampton observed several of the large animals from the public roadway and recognized their deprived condition. There is nothing to indicate that, when Hampton, the Humane Society employees, the veterinarian, and the Sheriff's Deputies first arrived at the farm to investigate on April 16, 1998, they encroached upon the property in a manner different from any other guest, deliveryman, or other caller; as such, they were not trespassers. See *Galbreath v. State*, supra; *Gilreath v. State*, 247 Ga. 814, 820 (279 SE2d 650) (1981); *State v. Nichols*, 160 Ga. App. 386 (287 SE2d 53) (1981). It is further undisputed that they did not enter Sirmans' home. Upon their arrival, the group immediately observed additional clearly deprived animals in need of immediate care in plain view. Thus, there existed probable cause of the commission of a crime, i.e., cruelty to animals.

Where evidence of a crime is visible from a vantage point where the officer has the legal right to be, the officer's observation does not breach the property owner's privacy rights. *State v. Nichols*, supra at 386. Further, the officer may seize evidence that is in plain view, and such seizure is, in effect, no search at all, but the collection of evidence of the crime. Id.

> Whether the [deprived animals were] ever in the plain view of [Hampton or the Sheriff's Deputies] was an issue of fact for the trial court. When we review a trial court's decision on

a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them. Because there was sufficient evidence to support the trial court's order, we find no error.

(Citation and punctuation omitted.) *State v. Williams*, 220 Ga. App. 100, 102 (2) (469 SE2d 261) (1996). See also *Smith v. State*, 160 Ga. App. 26, 28 (2) (285 SE2d 749) (1981).

(c) Accordingly, this Court will not consider whether the circumstances described herein also satisfied criteria that would have justified a search based upon exigent circumstances.

3. In his second enumeration of error, Sirmans contends that the trial court erred in overruling his motion to sever the assault charge from the cruelty offenses at trial. According to the evidence presented, the assault charge arose as follows: when Hampton and the Humane Society employees arrived at Sirmans' farm and, later, as they loaded the animals onto the trucks, Sirmans repeatedly yelled and cursed at them, threw rocks at them, and threatened to kill Hampton because she was taking his animals.

This Court recognizes Sirmans' concern that the assault on Hampton was not *directly* related to the negligent care of the animals that resulted in his being convicted of animal cruelty. It is unlikely, however, that the assault would have occurred *but for* Sirmans' neglect of the animals, which resulted in Hampton's presence on his property and the seizure of his animals.

Where joinder is based on a series of acts connected together, severance of the various counts in an indictment lies within the sound discretion of the trial court. *Bland v. State*, 264 Ga. 610, 611 (2) (449 SE2d 116) (1994). [Sirmans'] argument that the events giving rise to the [assault] were wholly unrelated and unconnected to the remaining charges is not supported by the facts of this case.

(Punctuation omitted.) *Varnadoe v. State*, 227 Ga. App. 663, 664 (1) (490 SE2d 517) (1997). Further, the evidence in this case was not complex, and there was no risk as to whether the jury would be able to apply the law separately and intelligently as to the cruelty and assault offenses. See *Woolfolk v. State*, 202 Ga. App. 59, 61-62 (5) (413 SE2d 242) (1991). Moreover, the fact that Sirmans was acquitted of nine counts of animal cruelty demonstrates that Sirmans was not prejudiced by the trial court's refusal to sever the trial. See *Barber v.*

*State*, 176 Ga. App. 103, 104 (2) (335 SE2d 594) (1985). There was no abuse of discretion.

4. Sirmans assigns as error the trial court's denial of his motion to prevent the State from asking qualifying questions or administering any oaths to the jury. Without deciding the merits of such denial, we note that no record or transcript of any such questions or oaths is before this Court. On appeal, Sirmans has the burden "to affirmatively show asserted error by the record. Having failed to demonstrate support in the record for this enumeration, we find no error." (Citations omitted.) *Hollis v. State*, 201 Ga. App. 224, 225 (1) (411 SE2d 48) (1991).

5. In his fourth enumeration, Sirmans asserts that the trial court erred in overruling his special demurrer to the accusation filed against him on September 18, 1998. We disagree.

> The accusation identified the animals by species . . . and distinguished between similarly described animals on the basis of living and dead animals. The misconduct by [Sirmans] was set out in each count. It strains credulity to assert that [Sirmans did] not know the specific offense with which [he was] charged or that such language does not allege criminal misconduct. Overly technical niceties of pleading are no longer required so long as the accusation is sufficient to be easily understood by the jury or is substantially in the language of the statute. Thus an accusation is sufficient if it charges the commission of an offense in plain terms and the nature of the offense is sufficiently described to permit both the accused and the jury to understand the crime charged in the accusation. The accusation here was sufficient for the purposes described above and [Sirmans'] contentions to the contrary are without merit.

(Citations and punctuation omitted.) *Smith v. State*, supra at 28 (3).

6. (a) Finally, Sirmans claims that part of his sentence violated OCGA § 17-10-1 (a) (6) (A) (i) and (ii), because the trial court ordered that the Humane Society would retain the animals seized from Sirmans.[4] OCGA § 17-10-1 (a) (6) (A) prohibits the trial court from imposing a financial payment which exceeds the statutorily specified maximum fine or which is to be made to any unauthorized, nonlegal entity. However, that statutory subsection applies only to a trial court's modification, suspension, probation, or alteration of a *previously imposed* sentence. As such, it does not apply herein.

---

[4] The trial court allowed Sirmans to retain the animals not seized by the Humane Society, as well as any other animals he owned at the time of sentencing.

(b) That being said, however, there is a question of the trial court's authority to allow the Humane Society to retain the animals for which Sirmans was acquitted of cruelty. These animals included, inter alia, several dogs, a Welsh pony, a colt, a goat, and a duck.

"There is a presumption that a sentence was correctly imposed, and the burden of showing that a sentence was not correctly imposed is with the party who asserts its impropriety." (Citation and punctuation omitted.) *Lynn v. State*, 236 Ga. App. 600, 604 (512 SE2d 695) (1999). In this case, Sirmans has convinced this Court that the trial court was without statutory authority to deprive him of animals which the State failed to demonstrate were neglected or abused, because such animals were not contraband or evidence of a crime. Therefore, it is necessary to vacate that portion of Sirmans' sentence and remand for issuance of an order to release such animals to Sirmans. If the State is able to prove, however, that the equine animals required medical treatment while in the State's care, then the trial court may require Sirmans to pay for such care as a condition precedent to retrieving the equine animals only. See OCGA § 4-13-5 (statute providing for the recovery of costs incurred during the impoundment and sheltering of equines).

*Judgment affirmed. Sentence vacated in part and remanded. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MAY 19, 2000 —
RECONSIDERATION DENIED MAY 31, 2000 

*William W. Turner III*, for appellant.
*Robert B. Ellis, Jr., District Attorney, Ellen S. Golden, Assistant District Attorney*, for appellee.
*James C. Bonner, Jr.*, amicus curiae.